# CHARLESTON.

FRANK ANGILINE, *an Infant*, ETC., v. NORFOLK & WESTERN RAILWAY COMPANY *et al.* .

(No. 5271)

Submitted April 21, 1925.   Decided April 28, 1925.

1. RAILROADS—*Care Required As to Children Stated.*

A railroad company ordinarily is charged with no duty to a .trespasser found on its right of way except the negative duty of not wantonly or wilfully injuring him in the operation of its trains. Children are not exempt from this rule; though when discovered on the track or so near to the train as to be in a situation of danger a greater degree of care is required of those operating the train, than is required when an adult person is discovered in a like situation. (p. 87).

2. SAME—*Trainmen Not Required to Police Cars to Prevent Trespass by Children.*

While it is the duty of the train crew, if they know that children are actually jumping on and off of the moving train to take reasonable care not to injure them, it is not their duty to police the cars when in motion in order to prevent such trespass, nor to take into their custody while the train is passing, children observed near the tracks, on the assumption, well founded, that such children may attempt to board the train with probable resultant injury. (p. 90).

99 W. Va.

Error to Circuit Court, Mingo County.

Action by Frank Angiline, an infant, etc., against the Norfolk & Western Railway Company and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*James Damron, G. W. Crawford,* and *W. E. Whitt,* for plaintiff in error.

*Holt, Duncan & Holt,* for defendants in error.

LIVELY, PRESIDENT:

Plaintiff, Frank Angiline, sued the Norfolk & Western Ry. Co. for personal injuries sustained by him while attempting to board a moving freight train at Hatfield in Mingo County, on March 15, 1924. At the conclusion of plaintiff's evidence the court directed a verdict for defendant which was returned and judgment of *nil capiat* entered; and plaintiff prosecutes this writ of error.

The first count of the declaration charges that men, boys and children customarily boarded moving trains of defendant in the Village of Hatfield, a custom well known to defendant, and that children used the tracks there as a passage-way and for a playground. The duty charged to have been violated by defendant was to keep a lookout for helpless children on the railway right-of-way and use reasonable care not to injure them in the operation of its locomotives and trains. This duty was violated by defendant in not keeping a lookout for defendant, and in operating its trains so negligently and carelessly that plaintiff, who was in a place of danger on defendant's right-of-way, was injured. The second count charges that it was defendant's duty after plaintiff, a helpless infant, was discovered in a place of danger upon its right-of-way, to use reasonable care to avoid injury to him in the operation of its trains; that defendant by its servants, and especially its brakeman Duncan, did see plaintiff *start* to enter into a position of danger on defendant's right-of-way and made no effort to prevent him from doing so, but could have done so by the use of ordinary care; that after it permitted plaintiff to enter into a position of danger on its right-of-way, it recklessly and carelessly operated its train whereby plaintiff was run over, his left foot crushed and permanently

injured, by all of which he has sustained damages of $40,000.00. The declaration says it was defendant's duty to keep a lookout for plaintiff near its tracks; that when it discovered him in a place of peril its duty was to use reasonable care in the operation of its trains to avoid injury to him; that it did discover him *about* to enter into a place of danger, but did not discharge its duty to prevent him from doing so and did not use reasonable care and prudence to prevent him from entering into danger, but wantonly and wilfully allowed him to do so; and then, by negligently operating its train caused the injury alleged.

The facts are: Plaintiff was a child aged 5 years and 11 months, and was playing marbles with other boys in front of the Borderland Coal Company's store No. 2 in the Village of Hatfield through which the railroad tracks ran. These tracks at that particular point were three in number, an east-bound track, a west-bound track, and a side track which lay between the other tracks connecting with them by switches at both its eastern and western ends. Defendant's freight train approached the east switch of the side track, which was opposite the store where the boys were playing at marbles, and brakeman Duncan came forward and threw the switch so that the train might enter the side track. Ova Gamble, 15 years of age, left the marble game and came over to where Duncan was standing and was soon followed by plaintiff. Duncan asked plaintiff what he was doing there, and plaintiff replied that he was going to ride the train. Duncan told him he had better not ride the train; that two State police were on the cab when the train left Williamson and he did not know if they had gotten off. Then plaintiff said he was going to ride the train anyhow, and the brakeman told him he had better stay off. At this time the engine entered the middle track, the brakeman boarded the engine, and the boys stepped back onto the east-bound track to let the train pass. After the brakeman boarded the engine Ova Gamble cautioned plaintiff to let the train alone, as he was too small to catch it. After about 20 cars had passed onto the switch plaintiff approached the moving train, caught hold of a stirrup on one of the cars, and while holding onto it his foot got caught under a wheel and was crushed, necessitating amputation

above the ankle. It appears that the store was closed and that no other persons were then near the scene of the accident.

Plaintiff insists that the trial court could not say as a conclusion of law that no negligence on the part of defendant was shown, and therefore the court erred in striking out plaintiff's evidence and directing the verdict. It is argued that when Duncan, the brakeman, was told by plaintiff that the latter intended to ride the train, it was his duty to prevent him from doing so by taking charge of him, putting him in charge of another (no one was there except Ova Gamble), or to remove him from the premises. The argument is that when the boy announced his purpose to ride the train, then defendant was bound to prevent him from carrying out that intention; that defendant had then discovered plaintiff in a situation of danger, and negligently operated its train causing the injury. On the other hand, defendant says that plaintiff was a trespasser and it owed him no duty except that it should not wantonly or wilfully injure him, citing *Dickinson* v. *Coal Co.*, 76 W. Va. 148; *Spicer* v. *Ry. Co.*, 34 W. Va., 514 and similar cases; and that plaintiff being an infant was not excepted from the rule, citing *Uthermohlen* v. *Bogg's Run Co.*, 50 W. Va. 457, and *Conrad* v. *R. R. Co.*, 64 W. Va. 176. Plaintiff relies upon *C. & O. Ry. Co.* v *Hawkins*, 98. C. C. A. 443, 174 Fed. 597; *Gunn* v. *Ohio River R. R. Co.*, 36 W. Va. 165, and 42 W. Va. 676; *Dempsey* v. *N. & W. Ry. Co.*, 69 W. Va. 271; and *McGuire* v. *Ry. Co.*, 70 W. Va. 538. These latter cases are to the effect that it is the duty of a railroad company to keep a reasonable lookout for small children on or near its tracks and when discovered, or by reasonable lookout should have been discovered, to use reasonable care in the movements of its train to prevent injury to them.

Although children may be trespassers, a greater duty is imposed upon a railroad company to avoid injury to them when discovered on or near the tracks than in the case where adult trespassers are discovered. The negligence here charged consists of the failure of the brakeman to use ordinary precaution to prevent plaintiff from entering into danger; and the negligent and careless manner in which the train was operated after plaintiff did enter into danger. Just what

particular act the brakeman should have done ·to discharge that alleged duty and which he did not do, is not set out. It is argued that he should have placed the boy in the charge of some responsible person, or he should have removed him from the premises. There was no one except Ova Gamble near; and we do not perceive authority in a brakeman to command the services of strangers in that regard. To have forcibly ejected him from the right-of-way would likely have been futile. Nothing would prevent his return while the train was passing. To have taken possession of him by force and placed him on the engine would have been a safe method of conserving his safety for the time being, afterwards fraught with danger when he was released and returned along the railroad tracks. We do not think it to be the duty of a railroad company to take into its custody for safe keeping from the movement of its train, children who may be found near its tracks. The trains must move in commerce. It would be an unreasonable burden to require long trains of freight cars to be stopped until children who were found along its right-of-way were removed or taken into custody on the assumption that they would attempt to board the train while moving. It is quite different when they are discovered in situations of danger upon the track or so near that they might be run over. The averment in the declaration that the train was recklessly and carelessly operated so as to injure plaintiff is not substantiated by the evidence.

The *Hawkins* case cited is quite different in principle from the instant case. The child there run over was playing on and near a spur track when a car was ''kicked'' onto the spur in charge of a brakeman. He stopped the car and removed the child from danger. The engine a short time afterwards came on the side track to place the car thus ''kicked'' in (by flying switch), passing the child near the track by a pile of lumber. Upon returning after placing the car a short distance away the child was run over, the crew not knowing until a short time afterwards that the fatal accident had occurred. The negligence there consisted in the knowledge of the presence of the child in a place of danger and the failure of the crew to take such care in the return of the engine after placing the car as was required from their

knowledge of the child's situation. The brakeman, after removing the child from the track, knew that the engine would immediately return; and the court said it was his duty to place the child in a place of safety or take such care in handling the engine as not to injure it. Two minutes elapsed from the time the engine passed the child at the lumber pile near the track until the engine returned and the accident occurred. The dwelling house of the child was fifty feet from where the fatal tragedy occurred. The engineer, fireman and brakeman observed the child near the lumber pile when the engine first passed to place the car. The time was about 6:30 p. m. in January. Knowing the child was there, it was negligent in them not to keep a careful lookout when returning two minutes afterwards and thus avoid running over it. Judge Goff dissented, without stating his reasons. When the train in the instant case was moving on the side track plaintiff was in a place of safety and with a companion who warned him to let the train alone; that he was too small to ride the train. The brakeman told him not to ride it. That the child was a trespasser, there can be no question. Defendant owed him no duty except to use ordinary care not to run over him or do him some injury in operating its train, after it had discovered him, or ought to have discovered him by the use of ordinary care, in a *situation* of danger. In *Swartwood's Guardian et al.* v. *Louisville & N. R. Co.,* 111 S. W. 305, it was held that a railroad company is not compelled to maintain a lookout for children who are in the habit of jumping on and off its cars while in motion in cities and other populous places. And in *St. Louis Southwestern Ry Co. of Texas* v. *Davis,* 110 S. W. 939, it was held that while it was the duty of the train crew to keep a lookout for trespassing children who might be on the track in front, that it was not their duty to inspect their trains after setting them in motion, for the purpose of preventing children from leaping on the cars as they pass. The opinion says: "The perils peculiar to railway operation grow out of danger of collisions with persons and objects upon the track in front, and the special duty of keeping a lookout ahead is important in order to avoid such results. Those in charge of trains would be subjected to an unreasonable requirement if it should be exacted of them to

watch both the front and rear of their trains. The latter duty could be exercised only at the expense of the former." And the opinion quotes with approval Sec. 3311 of Thompson on Negligence, in which the author says: "It (railroad company) is not bound to see that children do not climb upon its trains at street crossings, and is not chargeable with negligence for failing to adopt precautions against their doing it."

The doctrine of our cases is, as before stated, that a railroad company's duty to children trespassers is to keep a reasonable lookout for them while trespassing on its tracks, and when discovered in a situation of danger to use reasonable precaution not to injure them. To extend this doctrine so as to require the company to police its tracks while the trains were in motion to see that trespassers did not board the cars, or to stop the movement of the trains because some trespasser has indicated a disposition to board it, would be an unreasonable requirement. The court must first deal with the question of legal duty when it takes into consideration the matter of compassionable innocence and irresponsibility. The judgment will be affirmed.

*Affirmed.*